A. C. BLAIR AND OTHERS V. A. L. REID AND OTHERS.

The debtor may plead a covenant not to sue, in suspension of the action; and he may doubtless plead in reconvention against the covenantor, damages accruing from the breach of the covenant.

Assignees of a note, with notice of a covenant by the payee not to sue at maturity, are bound by such covenant in so far as it operates to suspend the right of action; but they are not liable for damages for the breach of said covenant.

Where the interest on a debt was payable at stated periods, and the debtor made a consignment to the creditors, for sale to pay the interest, and the creditors sent the debtor an account of sales, showing that the consignment sold for more than enough to pay the interest, and informed him that the excess had been credited to his account, which they trusted would meet his approval, and it did not appear that the debtor disapproved thereof; but being prematurely sued for the principal, pleaded such excess in set-off; it was held that it must be regarded as a payment upon the debt to become due.

Appeal from Gonzales. Tried below before the Hon. Fielding Jones.

Suit by A. L. Reid and others, composing firm of Reid, Sprague & Co., against A. C. Blair, John G. Logue, and Isam Tooke, commenced March 4th, 1857, on a promissory note for $3000, signed by Blair, payable to Logue or order, and assigned to Tooke, by whom it was assigned to plaintiffs. The note was dated December 29th, 1852; was payable on or before the first day of March, 1857; and bore interest at the rate of ten per cent. from date.

Defendants "moved to dismiss the cause" on the ground that it was premature, "the parties having no right to sue until March 1st, 1858, unless the defendant failed to pay the interest on said note." (Signature of counsel.)  "And defendant further answering says," &c., to the effect that "he" had been damaged $150 by the premature commencement of the suit; "that he had promptly paid the interest on said note, in accordance with his said deed of trust, executed to said J. G. Logue to secure the payment of this said note of $3000, in which said instrument of writing said J. G. Logue bound himself not to sue until the first of March, 1858, as will more fully appear from said instrument itself, marked Exhibit A, and will be offered as evidence upon the trial of this cause, as well as the bond for title made, executed and delivered to defendant by said J. G. Logue; and defendants further aver that the said plaintiffs were fully cognizant of the fact when they purchased said note.   Said bond, marked Exhibit B, will be offered as evidence on trial.   Therefore defendants pray for their damages, to wit," &c.   (Signed by attorneys for all the defendants by name.)

Exhibit A was a certified copy of a mortgage from Blair to Logue of certain slaves, "to secure the sum of fifteen thousand dollars, payable in one, two, three, four and five years, in equal annual instalments, with ten per cent. per annum interest from date, due and payable annually on the whole amount; that is to say, at the end of one year, the sum of one thousand and five hundred dollars due as interest; and so on yearly the whole interest to be paid and kept down; and in case the interest shall be so paid as above specified, the said mortgagee binds himself, his heirs, assigns and legal representatives, not to enforce the payment of either of the said yearly instalments until the full expiration of the term of five years" with provisos not now important.   The mortgage, after describing part of the negroes, recited that they had been purchased by the mortgagor that day from the mortgagee.   Said mortgage was dated December 29th, 1852.

Exhibit B was a title bond from Logue to Blair, of same date, for real estate and slaves, (for a description of the slaves reference was made to the mortgage that day given by Blair to Logue) "for the consideration of the sum of fifteen thousand dollars, due and payable in five equal annual instalments, with ten per cent. interest per annum from date; and the interest on the whole sum due payable annually; that is to say, at the expiration of

one year the sum of one thousand five hundred dollars interest, and yearly thereafter the interest upon the whole amount of the principal; and in case the said interest is promptly and faithfully paid at the end of each and every year as before specified, the said obligor binds himself not to enforce the payment of any of the said instalments of the principal until the whole sum shall become due; or in other words, until the expiration of five years," unless, &c., exceptions not now important.

Amended answer alleging that plaintiffs had full notice of " the mortgage," and that they were informed when they purchased the note, "that they could not sue until the last note became due, to wit: the 1st of March, A. D. 1858, unless defendant failed to pay the interest," &c.; that defendant "had paid the interest on said note annually, as evidenced by indorsements on the back of said note; and that he paid the interest for the year 1856, on the 26th day of February, A. D. 1857, and $40 56 on the principal, in all $340 56, which he now pleads in offset." Claim for damages raised to $1000.

There was a written acknowledgment in the transcript, by plaintiffs' attorneys, that plaintiffs had notice of the contents of the mortgage and title bond.

Plaintiffs demurred generally to the answer. The entry of judgment was to the effect "that defendants' motion to dismiss plaintiffs' petition" was overruled; that plaintiffs' demurrer to defendants' "plea in reconvention" was sustained; and that plaintiffs took a nonsuit.

It appeared from a statement of facts, that defendants moved to dismiss the suit, (and reference was made to the paper heretofore mentioned,) which was overruled; that plaintiffs moved to dismiss the defendants' plea in reconvention, which was sustained; that a jury was then asked by defendants, and the petition and answer read to the Court and jury; that plaintiffs then read the note in evidence, and rested; that defendants then read in evidence the mortgage and title bond; a letter from plaintiffs to Blair, dated New York, February 26th, 1857, inclosing account of sale of six bales of cotton sent them to pay "your interest on the $3000 mortgage. The balance, $40 56, we have credited to your account, which we trust will meet your approval;" the acknowledgment of notice above mentioned; indorsements on the back of the note, showing the payment of the interest thereon to January 1st, 1856; that defendants pleaded

Blair v. Reid.

in set-off $340 56; and that after the cause had been fully ar-
gued, and after the Judge had charged the jury, the plaintiffs
were permitted to take a nonsuit; to which defendants excepted.
Certified by the Judge, the parties being unable to agree.

The charge of the Court, which caused the plaintiffs to take a
nonsuit, was as follows :—

If the jury believe, from the evidence, that the plaintiffs in this
case had knowledge of the existence of the bond and mortgage
executed by the defendant to Logue, and the conditions therein
contained ; and further, if you believe that the defendant has
paid the interest on the note up to the first day of January,
1857, the plaintiff would have no right to sue, and you should
find for defendants.

*Mills* and *Fly*, for appellants. Defendants pleaded damages in
reconvention for violation of contract not to sue ; and also a
special indebtedness of $40. Nonsuit cannot be taken after plea
in reconvention. (Thomas v. Thomas, 3 Tex. R. 270 ; McCoy
v. Jones, 9 Id. 363.) The plaintiffs seem to have supposed, in
taking the nonsuit, that the covenant not to sue was a bar to the
action ; this is however not the law. (Reed's Ex'or v. Harrison,
2 Bibb, R. 447 ; Parsons on Con. 220.) A covenant not to sue
at all, or not to sue for a limited time, neither is a release in its
nature ; nor is it a bar to the action ; but in the former case, the
covenant is construed to be a release to avoid circuity of action ;
and in the latter case, less than the amount of the debt would be
recovered, and could not be construed to be a release. (2 Salk.
575 ; 12 Mod. 552 ; 2 Saund. 48, note 1 ; Id. 150, note 2.)

Blair was entitled to damages for the breach of the contract
not to sue, inasmuch as the proof appears that the interest was
regularly paid up on the note; this is well settled. (Mendenhall
v. Lenwell, 5 Blackf. p. 125.)

At least Blair was entitled to judgment for the forty dollars,
which plaintiffs admitted to be in their hands subject to defend-
ant's order.

*Parker & Nichols*, for appellees.   I. Plaintiffs were bound to
sue to fix the liability of the indorsers.

II. The interest for the year 1856 was not paid when due, as
stipulated ; not till the 26th February, 1857.

III. The Court having stricken out all of defendants' pleas,

there could be no error in granting a nonsuit. If there was error at all it was in striking out the pleas; but there was no error in striking out the pleas, as they set up no defence. (Bradford v. Hamilton, 7 Tex. R. 55; Castro v. Gentiley, 11 Id. 28.)

IV. The verdict of the jury, under the charge of the Court, could have only placed defendants in the same position in which they were placed by the nonsuit.

WHEELER, J. In the Courts of Common Law it is held that a covenant not to sue upon a contract, for a limited time, is not pleadable in bar or suspension of an action upon such contract. It does not suspend the creditor's action, and the debtor's remedy is by suit upon the covenant. (15 Mass. 112; 8 Pick. 229; 11 Id. 159, 160; 6 Wend. 471; 3 M. & W. 210.) By some Courts this rule is held not to apply to actions of assumpsit, a covenant not to sue for a time certain, being there held to be a bar during that time. (2 Parsons on Cov. 219, 220.) And so, I apprehend, it must be held in all cases in our Courts; since our practice discountenances circuity of actions, and requires parties to litigate all their respective rights respecting the subject matter in question, in one suit. The debtor may plead the covenant not to sue in suspension of the action; and he may doubtless plead in reconvention against the covenantor, damages accruing from the breach of it. But in this case the plaintiffs are not the covenantors. They have not covenanted not to sue the defendant. And clearly they are not liable to the defendant in an action, or plea in reconvention, which is, in effect, an action, for the breach of a covenant to which they were not parties. The defendant's action upon the covenant, if he have any, lies against the covenantor, not the plaintiffs. The latter, as assignees of the note, with notice of the covenant, are bound by it in so far only as it operates to suspend the right of action. They cannot be held responsible in damages for their assignor's breach of covenant. It cannot be pleaded in reconvention against them.

Nor was the sum alleged to have been paid by the defendant upon the principal debt pleadable in reconvention. Having been so paid, though upon a debt not then due, but thereafter to become due, it could not be recovered back. If not credited it might have been pleaded as a payment, but not in reconvention.

The exceptions to the plea in reconvention were rightly sus-

tained; and there was nothing to prevent the plaintiff from taking a nonsuit. The judgment is affirmed.

Judgment affirmed.